

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-2-2005

# Miller v. State of NJ

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Miller v. State of NJ" (2005). *2005 Decisions*. Paper 752.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/752

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3502

STEPHEN MILLER,

Appellant

v.

STATE OF NEW JERSEY;
OFFICE OF THE PROSECUTOR-UNION COUNTY;
DEBRA CANNELLA; LAURA HOOK;
OFFICE OF THE PROSECUTOR-ESSEX COUNTY

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-06150)
District Judge: Faith S. Hochberg

Submitted Under Third Circuit LAR 34.1(a)
June 29, 2005

Before: ROTH, RENDELL and BARRY, Circuit Judges.

(Filed: August 2, 2005)

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>.

## I. Factual and Procedural Background

Stephen R. Miller appeals the District Court's grant of summary judgment against him on his complaints against two Assistant Prosecutors, the Essex County and Union County Prosecutor's Offices, and the State of New Jersey (collectively "Defendants"). We will affirm.

Miller was an Essex County Sheriff's Detective from 1982 until his resignation in 2002. In March 1999, Miller's then girlfriend, Pamela Feiler, filed a domestic violence complaint against him with the Clark Police Department in Union County, New Jersey. Two Clark Police Detectives conducted an investigation into the incident, which resulted in Miller being charged with harassment, criminal mischief, and domestic violence. Pursuant to the New Jersey Attorney General's Guidelines governing the conduct of law enforcement officers involved in domestic violence incidents, Assistant Union County Prosecutor Laura Hook prohibited Miller from carrying a firearm while off-duty until Hook completed an investigation into his fitness for duty. In April 1999, Feiler informed Hook that she no longer wished to pursue the domestic violence matter; accordingly, the complaint against Miller was dismissed and all restrictions related to his ability to carry firearms were removed. As a result of what Miller claims were "aggressive and unlawful police tactics by the Clark Police," he brought a civil claim against the detectives who conducted the domestic violence investigation.

Six months later, Debra Stubaus, Miller's other girlfriend, lodged her own domestic violence complaint against him with the Essex County Prosecutor's Office. This complaint was dismissed when Stubaus refused to appear in court due to her fear of "Det[ective] Miller and his attorney." Again, the Attorney General's Guidelines required Miller to turn in his service weapon and prohibited him from carrying any weapon while off-duty. As a result of the domestic violence complaint, Essex County Assistant Prosecutor Debra Cannella initiated an investigation into Miller's fitness for duty and whether it would be appropriate to permit him to carry a firearm while off-duty. While Cannella conducted her investigation, she reinstated Miller's firearm privileges in part by allowing him to carry his service weapon while on-duty, but required that he turn it in to his supervisor upon completing each patrol shift. Cannella sought Hook's view about this and any files. Cannella consequently recommended that Miller continue to be permitted to carry his service weapon only while on-duty and that his off-duty privileges be reinstated conditioned upon his successful completion of domestic violence counseling. Miller refused to participate in the counseling program and voluntarily resigned from the Sheriff's Office in 2002.

On November 12, 2002, Miller filed a complaint with the New Jersey Superior Court alleging that the restrictions imposed on his possession of his service weapon violated 42 U.S.C. § 1983, his substantive and procedural due process rights under the Fourteenth Amendment, the New Jersey Law Against Discrimination, and the common

3

law right to fundamental fairness.  The Defendants removed the case to the United States District Court for the District of New Jersey and all Defendants moved for summary judgment.  The District Court granted the motions for summary judgment.  Miller moved for reconsideration on July 23, 2004; the District Court denied this motion.  Miller now appeals.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over Miller's federal claims pursuant to 42 U.S.C. § 1983 and supplemental jurisdiction over Miller's state law claims pursuant to 28 U.S.C. § 1367.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise de novo review over a District Court's grant of summary judgment.

## III. Discussion

Miller's cause of action is premised on his belief that Prosecutors and Sheriff's Deputies from Union and Essex Counties conspired to restrict and, in doing so, to violate, what Appellant believes is his absolute right "under the Second Amendment to possess a firearm [while] off-duty since it is reasonably related to his service in the state-sanctioned militia," i.e., the Essex County Sheriff's Office.  (Appellant Br. at 22.)  In response to Miller's complaint, the Defendants raised the affirmative defense of qualified immunity. The District Court described the relevant factors a court must evaluate when presented with a defense of qualified immunity:

a government official sued for damages in an individual capacity pursuant to 42 U.S.C. § 1983 is entitled to qualified immunity unless the plaintiff shows that the official violated "clearly established federal statutory or Constitutional rights of which a reasonable person would have known." As a threshold inquiry in a qualified immunity analysis, the court must consider whether the plaintiff's allegations, if assumed to be true, establish a [C]onstitutional violation.

(Dist. Ct. Op. at 4 (citations omitted).) In attempting to prove that Defendants violated a clearly established Constitutional right, Miller analogizes the role a Sheriff's Deputy plays as a law enforcement officer to that of a member of a state militia in times of crisis. Miller points to N.J.S.A. § 38A:1-1(a), (g) & (h) defining militia as "all the military . . . land, air and sea forces established by State or Federal laws, as applicable."[1] In relation to this statutorily constructed authority conferred upon the Governor to call on members of the state militia, i.e., the National Guard or Army, in times of crisis, Miller urges his role in the post-9/11 world to be analogous to that of a militiaman.

Miller's interpretation of the Second Amendment is unpersuasive. See generally, United States v. Miller, 307 U.S. 174 (1939) (holding that the defendant could not avail himself of Second Amendment protection because his weapon possession bore no reasonable relationship to the preservation of a well regulated militia.) While local law enforcement officers undoubtedly play a critical role in combating future acts of

---

[1] "Militia" means all military forces of this State, whether organized, or active or inactive. N.J.S.A. 38A:1-1(a). "Military" means any part of or all of the armed forces. N.J.S.A. 38A:1-1(h). "Armed forces" means any land, air and sea forces established by State or Federal laws, as applicable. N.J.S.A. 38A:1-1(g).

5

terrorism, the Essex County Sheriff's Office is clearly not a militia for purposes of satisfying the first prong of a qualified immunity analysis, i.e., a clearly established Constitutional right protected by the Second Amendment.

In relation to Miller's NJLAD claim, it appears that the District Court incorrectly granted summary judgment on the basis of qualified immunity. In a footnote, the District Court stated that "it should be noted that the qualified immunity defense also applies to the plaintiff's claim that the defendant's reliance and application of the non-gender neutral Assembly Task Force Domestic Violence training materials violated the NJLAD." (Dist. Ct. Op. at 8.) However, qualified immunity is inapplicable to a state law cause of action. See Rodriguez v. Torres, 60 F. Supp. 2d 334, 354 (D.N.J. 1999) ("A qualified immunity analysis . . . does not apply to [a] pendent state claim.") Although summary judgment may have been incorrectly granted based on qualified immunity, under the appropriate analysis of this issue, Miller has not met his burden of establishing a prima facie case of employment discrimination under NJLAD.

Miller's NJLAD claim alleging reverse gender discrimination is presented under the theory of disparate impact. In such a case, a plaintiff must demonstrate "background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority." Murphy v. Hous. Auth. and Urban Redev. Agency, 32 F. Supp. 2d 753, 764-65 (D.N.J. 1999), aff'd, 208 F.3d 206 (3d Cir. 2000). In Murphy, the District Court went on to explain that "the types of 'background

6

circumstances' which might support an inference of reverse discrimination fall into two categories: (1) evidence indicating that the particular employer at issue has some reason or inclination to invidiously discriminate against the majority; and (2) evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." Id. at 764 (citations omitted).

The grounds Miller presents for finding Defendants liable for employment discrimination under the NJLAD are less than persuasive. In his disparate impact claim, Miller alleges that Essex County used discriminatory "training material [that] summarize[d] domestic violence as a wheel with several spokes in it[,] wherein each spoke represents power and control and consistently characterizes the male exercising power and control over her, the victim." (Appellant Br. at 42 (internal quotation marks omitted).) But even if those materials were deemed discriminatory - which we do not decide - they, together with Defendants' actions in restricting Appellant's off-duty firearm privileges due to two separate domestic violence complaints, hardly support the inference that the Defendants were discriminating against Miller based on his gender. Cannella received a complaint of domestic violence naming Miller and, as instructed by the New Jersey Attorney General's Guidelines, restricted Miller's firearm privileges pending her investigation as to his fitness to carry a firearm. In light of two domestic violence incidents, Cannella made the determination that Miller should complete a domestic violence counseling course prior to his off-duty firearm privileges being fully

7

reinstated; this was a determination well within her discretion as the County official charged with evaluating firearm seizures from law enforcement officers accused of domestic violence. No inference of discriminatory animus can be drawn from this conduct.

Miller also alleged that the restrictions placed upon him violated the common law doctrine of fundamental fairness. The New Jersey common law doctrine of fundamental fairness is, according to the New Jersey Supreme Court, "a doctrine to be sparingly applied . . . . It is appropriately applied in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious deprivation." Doe v. Poritz, 142 N.J. 1, 108 (1995). Miller clearly is not faced with a consequence of such magnitude.

Likewise, Miller's contention that the manner in which Cannella conducted her investigation into Miller's fitness for duty violated the Due Process Clause of the Fourteenth Amendment is unpersuasive. Miller's argument that his property right to employment was violated fails; the conditioning of his firearm privileges had no effect on his employment status and he voluntarily resigned. Also, Miller cites no caselaw that supports the proposition that there is a right to procedural due process that would be implicated by the County Prosecutor's investigation conducted here, and we are unaware of any support for such a right under these circumstances.

Therefore, for the reasons stated above, we will affirm the order of the District Court.

8